# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| AMELIE NGAMBY,<br><br>    Plaintiff,<br><br>v.<br><br>EMBER HAMBURG,<br>GREYHOUND LINES, INC.,<br>JAMES KENNEDY, and<br>AMALGAMATED TRANSIT UNION<br>LOCAL 1700,<br><br>    Defendants. | Civil Action No. TDC-15-0931 |

## MEMORANDUM OPINION

Plaintiff Amelie Ngamby, who is self-represented, has filed suit against Defendants Ember Hamburg, Greyhound Lines, Inc. ("Greyhound"), James Kennedy, and Amalgamated Transit Union Local 1700 ("Local 1700"). She alleges discrimination on the basis of national origin and breach of contract related to an involuntary furlough and subsequent termination from her job with Greyhound. Pending before the Court is the Motion to Dismiss filed by Kennedy and Local 1700 (collectively, "the Union Defendants"). The Motion is fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local Rule 105.6. For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts are presented in the light most favorable to Ngamby, the nonmoving party:

## I. Ngamby's Involuntary Furlough and Termination

On September 26, 2012, Ngamby was involuntarily furloughed from her job as a ticket agent with Greyhound. Ngamby, who hails from Cameroon, claims that non-African ticket agents with less seniority were not furloughed. Ngamby requested and received transfers to other Greyhound locations, but her managers prevented them from occurring. Although she belonged to Local 1700, the union did not assist her. Instead it chose to "look the other way" and allowed Greyhound "to break their contract." Compl. ¶ 6, ECF No. 2.

Ngamby returned to full-time employment with Greyhound as a service worker on November 13, 2012. Greyhound mechanic Jose Ruiz, who had an oversight role over service workers, including Ngamby, subjected her to disparate treatment and harassment because of her national origin. For example, on September 10, 2013, Ruiz instructed a Greyhound service worker to clean a particular bus. The employee refused and was not disciplined. Ruiz then gave the same instruction to Ngamby, who was occupied cleaning a different bus. When Ngamby also refused, Ruiz complained to David Ortega, the manager on duty. Ngamby tried to explain that Ruiz's demand conflicted with prior instructions from Rebecca Wright, Ngamby's usual supervisor, who was on vacation that day. In response, Ortega raised his voice and told Ngamby to go home. When Ngamby returned to work on September 11, she attended a meeting with a union representative and a Greyhound official, during which she was fired. Ngamby contacted Wright to ask for assistance in getting her job back, but her termination was not rescinded. Local 1700 did not pursue a grievance on her behalf or otherwise try to help her regain her job.

## II. Procedural History

On September 8, 2014, after Ngamby had filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"), the EEOC mailed her a "right-to-sue letter,"

dismissing her charge of employment discrimination and informing her of her right to file a lawsuit within 90 days. Ngamby's EEOC charge document is not part of the record in this case, and Ngamby has not alleged its contents. On December 14, 2014, 97 days after the notice was mailed, Ngamby filed her Complaint in this action in the Circuit Court for Prince George's County, Maryland.[1] The Complaint names Ember Hamburg, Greyhound's Director of Human Resources, and James Kennedy, the Vice President of Local 1700, as defendants, and seeks compensatory and punitive damages from Greyhound and Local 1700. On April 1, 2015, the Union Defendants, who had been previously served with the Complaint, removed the case to this Court based on federal question jurisdiction. On April 7, 2015, the Union Defendants filed their Motion to Dismiss Plaintiff's Complaint, to which Ngamby filed a Response on April 27, 2015. The Union Defendants filed a Reply Memorandum on May 11, 2015. To date, neither Hamburg nor Greyhound has been served with the Complaint.

## DISCUSSION

In their Motion, the Union Defendants construe Ngamby's Complaint, which does not explicitly reference any statutory or common law causes of action, as alleging two claims: (1) a "hybrid § 301 claim"—an allegation that Greyhound breached the collective bargaining agreement and that Local 1700 breached its duty of fair representation—arising under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (2012) and the National

---

[1] The cover page of Ngamby's Complaint has three date stamps from the Clerk of the Circuit Court for Prince George's County: December 15, 2014; January 7, 2015; and January 29, 2015. The first two stamps are crossed out, suggesting that the Clerk did not accept the Complaint as properly filed until January 29. For the purposes of this Motion, the Court assumes without deciding that the Complaint was filed on December 15, 2014, the date most favorable to Ngamby.

Labor Relations Act, 29 U.S.C. §§ 151-169;[2] and (2) an employment discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* In the Motion, the Union Defendants seek dismissal on the grounds that the LMRA prevents Kennedy from being held personally liable for the wrongs alleged by Ngamby, that Ngamby's hybrid § 301 claim against all defendants is time-barred, and that her Title VII claim fails because she did not exhaust administrative remedies before the EEOC. When Ngamby submitted her EEOC right-to-sue letter with her Response, the Union Defendants shifted their argument against the Title VII claim to an assertion, in their Reply Memorandum, that Ngamby failed to file her Complaint within 90 days of her right-to-sue letter, such that it is time-barred.

**I.   Legal Standards**

   **A.   Motion to Dismiss**

The claims against Kennedy are properly considered as the subject of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not

---

[2]   Section 301(a) of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). This provision creates a cause of action for an employee alleging that an employer has breached a collective bargaining agreement. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). An employee's cause of action against the union for breach of its duty of fair representation is implied from the National Labor Relations Act. *Id.*

suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

B. **Motion for Summary Judgment**

Because Ngamby has submitted evidence for the Court's review and because portions of the Motion rely upon this evidence, the Motion will be converted, with respect to the remaining claims, to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49.

II. **Subject Matter Jurisdiction**

Although no party challenges the Court's subject matter jurisdiction, "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more

5

precisely, must) be raised *sua sponte* by the court." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004). Ngamby's Complaint does not name her causes of action. It begins with the heading "Wrongful Discharge," includes an allegation that Local 1700 allowed Greyhound to "break their contract," and concludes with a demand for damages resulting from national origin discrimination. Compl. ¶¶ 6, 11. The Union Defendants interpret the Complaint as alleging a "hybrid-301" claim under the LMRA and a discrimination claim under Title VII. A hybrid § 301 claim alleges both that the plaintiff's employer violated the collective bargaining agreement and that the union violated its duty of fair representation. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983); *Thompson v. Aluminum Co. of America*, 276 F.3d 651, 656-57 (4th Cir. 2002). The plaintiff "must prevail upon his unfair representation claim before he may even litigate the merits of his § 301 claim against the employer." *Thompson*, 276 F.3d at 656-57 (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 67 (1981) (Stewart, J., concurring)). The Union Defendants' Notice of Removal asserted that "[t]he Complaint is completely preempted by Section 301" of the LMRA and that removal was proper on the grounds of federal question jurisdiction under 28 U.S.C. § 1331. Notice of Removal ¶¶ 5-6, ECF No. 1. The Court is not convinced that Ngamby necessarily intended to assert these federal claims, as opposed to a state law claim under Maryland's anti-discrimination statute and a common law breach of contract claim. The Court agrees, however, that federal question jurisdiction exists because any breach of contract claim would be completely preempted by the LMRA.

Although the existence of a federal preemption defense to a state law claim brought in state court does not ordinarily provide grounds for removal to federal court, *see Richardson v. United Steelworkers of America*, 864 F.2d 1162, 1168 (5th Cir. 1989), certain areas of federal

law completely preempt related state law claims, such that there is federal question jurisdiction to remove state law claims to federal court. Specifically, state law claims for breach of collective bargaining agreements are completely preempted by § 301 of the LMRA, such that removal of such claims to federal court is proper. *See Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 558-60 (1968); *McCormick v. AT & T Techs., Inc.*, 934 F.2d 531, 534-37 (4th Cir. 1991) (affirming denial of motion to remand when a union member's state law causes of action required interpretation of the collective bargaining agreement and so were completely preempted by § 301 of the LMRA); *see also Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 102-04 (1962) ("[W]e cannot but conclude that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules."). To be preempted, a claim must require interpretation of the collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412-13 (1988).

As a union member, Ngamby's employment relationship with Greyhound was governed by a collective bargaining agreement, and her breach of contract claim is most fairly read as alleging a violation of the duty of fair representation under the collective bargaining agreement. Such a claim is completely preempted by federal labor law and thus was properly removed. *See BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of America*, 132 F.3d 824, 831-32 (1st Cir.1997); *Richardson*, 864 F.2d at 1168-70; *Taylor v. Giant Food, Inc.*, 438 F. Supp. 2d 576, 581-84 (D. Md. 2006). The Court therefore finds that there is federal question jurisdiction in this case under 28 U.S.C. § 1331, even if Ngamby intended to plead other state law causes of action in addition to, or instead of, any hybrid § 301 and Title VII claims.

7

### III. Claims Against Kennedy

The Union Defendants assert that the LMRA bars Ngamby's claims against Kennedy, the Vice President of Local 1700. The LMRA "prohibits a money judgment entered against a union from being enforced against individual union members." *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 407 (1981); 29 U.S.C. § 185(b). It thus immunizes individual union members from damages suits alleging breach of the duty of fair representation. *Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999); *Evangelista v. Inlandboatmen's Union*, 777 F.2d 1390, 1400 (9th Cir. 1985); *see also Gorge v. Carey*, 166 F.3d 1209, at *3 (4th Cir. 1998) (unpublished) (finding that union officers were not liable for damages under the LMRA).

To the extent that Ngamby asserts a Title VII claim against Kennedy, it also fails. Title VII extends liability to "labor organizations" which discriminate against their members based on national origin. 42 U.S.C. § 2000e-2(c); *see also Green v. American Fed'n of Teachers/Ill. Fed'n of Teachers Local 604*, 740 F.3d 1104, 1105-07 (7th Cir. 2014) (holding that a plaintiff must prove the same elements in a Title VII action against a labor union as in a Title VII action against an employer). But Title VII does not extend employer or union liability to individual supervisors, union officials, or other personnel. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998) (holding that "supervisors are not liable in their individual capacities for Title VII violations"); *Burrell v. Henderson*, 483 F. Supp. 2d 595, 600-01 (S.D. Ohio 2007) (holding that union officers are not individually liable for discrimination by the union). Ngamby's hybrid § 301 and Title VII claims against Kennedy are therefore dismissed.

### IV. Hybrid § 301 Statute of Limitations

The Union Defendants claim that Ngamby's hybrid § 301 claim is time-barred because it was filed more than six months after her cause of action accrued. Hybrid § 301 claims, including

those filed in state court, are subject to a six-month statute of limitations. 29 U.S.C. § 160(b); *DelCostello*, 462 U.S. at 169-72; *Cannon v. Kroger Co.*, 832 F.2d 303, 305-06 (4th Cir. 1987). The statute of limitations begins to run "when the plaintiff could first successfully maintain a suit based on that cause of action or when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *DelCostello v. Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen & Helpers of America*, 588 F. Supp. 902, 908 (D. Md. 1984) (citation omitted), *aff'd sub nom. DelCostello v. Local 557, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 762 F.2d 1219 (4th Cir. 1985); *see also Pantoja v. Holland Motor Exp., Inc.*, 965 F.2d 323, 327 (7th Cir. 1992). Specifically, "a cause of action for breach of the duty of fair representation accrues at the point where the grievance procedure has been exhausted or otherwise breaks down to the employee's disadvantage." *Dement v. Richmond, Fredericksburg & Potomac R. Co.*, 845 F.2d 451, 460 (4th Cir. 1988) (quoting *Hayes v. Reynolds Metals Co.*, 769 F.2d 1520, 1522 (11th Cir. 1985)).

Here, Ngamby filed—or at least made her first attempt to file—her Complaint on December 15, 2014. Six months prior to this date is June 15, 2014. Therefore, the Court must determine whether Ngamby knew, or should have known, before June 15, 2014 that a cause of action for a hybrid § 301 claim had accrued.

### A. Involuntary Furlough

Ngamby alleges that Local 1700 failed to assist her when she was involuntarily furloughed on September 26, 2012 and subsequently denied transfer to other Greyhound locations. Ngamby has submitted a letter, dated June 14, 2013, signed by Sandra M. Frye, Acting President of Local 1700. The letter informs Ngamby that Local 1700 voted to arbitrate her October 3, 2012 grievance. It further states:

9

> The process of arbitrating a dispute between the union and the company is, unfortunately a long one. I can't give you an accurate timetable now, but you will be given updates on the status of your case as it goes forward. When a date for a hearing is set, the union will notify you.

Pl.'s Resp. Ex. 5, ECF No. 15-5. The record contains no additional information whether Ngamby's grievance was arbitrated or whether she had subsequent communications with Local 1700 regarding this grievance.

It is reasonable to infer that the October 3, 2012 grievance related to Ngamby's September 26, 2012 involuntary furlough. Frye penned her letter about 18 months before Ngamby filed the Complaint in this case. The Union Defendants, relying on *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299 (7th Cir. 1983), argue that a union's prolonged delay in taking action on a member's grievance can eventually result in a constructive denial of the member's request, triggering the six-month statute of limitations. In *Metz*, the court held that even though the union never informed the union member that it was not pursuing her grievance, seven months of union inactivity was enough to put the member on notice that the request had been constructively denied. *Id.* at 303-04. However, unlike in *Metz*, a senior official in Local 1700 specifically informed Ngamby that the union was pursuing arbitration, that it would be a long time before the arbitration occurred, and that it would contact her when the arbitration had been scheduled. On the current record, there is a genuine issue of material fact whether Ngamby knew or should have known that her cause of action for a hybrid § 301 claim had accrued prior to June 14, 2014. *See King v. N.Y. Tel. Co.*, 785 F.2d 31, 34-35 (2d Cir. 1986) (denying summary judgment because when the union informed a union member that it would take her grievance to arbitration, there was a genuine issue of material fact whether the member could have reasonably known that her cause of action had accrued). Summary judgment on this aspect of Ngamby's claim is therefore denied.

### B. Termination

Ngamby also claims that Local 1700 breached its duty of fair representation by refusing to help her regain her job following her September 11, 2013 termination. Ngamby filed a grievance related to her termination, which Greyhound denied and Ngamby appealed to Local 1700's executive board. According to a letter from Acting President Frye, dated December 19, 2013, Local 1700's executive board voted on December 14 not to take Ngamby's grievance to arbitration. The letter states, "This effectively ends your grievance, as the action of the executive board is final." Pl.'s Resp. Ex. 7, ECF No. 15-7. Ngamby's claim therefore accrued on or about December 19, 2013, when she learned that she had exhausted Local 1700's grievance procedure. *See Dement*, 845 F.2d at 460. Because Ngamby did not file suit within six months of exhausting the grievance procedure, her hybrid § 301 claim regarding her termination is time-barred and dismissed.

### V. Title VII Filing Deadline

The Union Defendants argue that Ngamby's Title VII claim is also time-barred. Title VII prohibits employers from discriminating against employees because of the employee's national origin. 42 U.S.C. § 2000e-2(a). Before suing in federal court, a prospective Title VII plaintiff must first file an administrative charge with the EEOC or an appropriate state or local agency. *Id.* § 2000e-5(b), (f)(1); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508-09 (4th Cir. 2005). If the EEOC declines to take action on the charge, it issues a "right-to-sue letter" informing the plaintiff of its decision and her opportunity to file suit. 42 U.S.C. § 2000e–5(f)(1); 29 C.F.R. § 1601.28. The plaintiff has 90 days following of the receipt of this letter to file suit. 42 U.S.C. § 2000e–5(f)(1). This deadline is not jurisdictional, but is instead treated as a statute of limitations subject to equitable tolling. *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S.

345, 347, 353-54 (1983); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982); *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir. 1987); *Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 426-27 (D. Md. 2013).

In the Fourth Circuit, the limitations period starts when the right-to-sue letter is delivered to the plaintiff's home, not when the plaintiff actually receives it. *Harvey*, 813 F.2d at 654. However, "district courts should conduct a thorough examination of the facts to determine if reasonable grounds exist for an equitable tolling of the filing period." *Id.*; *see also Watts-Means v. Prince George's Family Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993). If there is no evidence regarding when the plaintiff received the right-to-sue letter, the court presumes receipt three days after it was mailed, pursuant to Federal Rule of Civil Procedure 6(d). *Weathersbee*, 970 F. Supp. 2d at 427; *see also Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984); *Nguyen v. Inova Alexandria Hosp.*, 187 F.3d 360, at *3 (4th Cir 1999) (unpublished).

The EEOC mailed Ngamby her right-to-sue letter on September 8, 2014. There is no evidence in the record of when Ngamby received the letter. If the Court were to apply the three-day presumption, it would assume that Ngamby received the letter on September 11. Her December 15 filing would thus fall more than 90 days after receipt. Here, however, because the Union Defendants raised the argument that Ngamby's Title VII claim is time-barred for the first time in their Reply Memorandum, Ngamby has yet to have an opportunity to offer evidence on the date of receipt or in support of equitable tolling. The record at this stage in the proceeding is inadequate to enable the Court to "conduct a thorough examination of the facts to determine if reasonable grounds exist for an equitable tolling of the filing period." *Harvey*, 813 F.2d at 654. Accordingly, the Motion is denied with respect to Ngamby's Title VII claims against Hamburg, Greyhound, and Local 1700.

## CONCLUSION

For the foregoing reasons, the Union Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED with respect to the hybrid § 301 and Title VII claims against Kennedy. For all other claims, the Motion is converted into a Motion for Summary Judgment. The Motion is GRANTED with respect to the hybrid § 301 claim against all Defendants regarding Ngamby's termination. The Motion is DENIED as to the hybrid § 301 claim regarding Ngamby's involuntary furlough and the Title VII claim against Hamburg, Greyhound, and Local 1700. A separate Order follows.

Date: October 29, 2015

/s/
THEODORE D. CHUANG
United States District Judge